UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RASHAWN Y.,

                        Plaintiff,

v.                                                       CASE # 20-cv-01427

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Law Offices of Kenneth Hiller, PPLC<br>  Counsel for Plaintiff<br>6000 North Bailey Avenue<br>Suite 1A<br>Amherst, NY 14226 | MARY ELLEN GILL, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ARIELLA R. ZOLTAN, ESQ.<br>KELLY ZVI TOLEDANO, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on June 15, 2000, and was 14 years old, an adolescent, on the application date. (Tr. 20, 337). Generally, plaintiff alleges disability consisting of learning disabilities and memory issues. (Tr. 350). On June 15, 2018, plaintiff obtained age 18.

### B.    Procedural History

On September 12, 2014, plaintiff[1] protectively filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Tr. 316). Plaintiff's application was initially denied, after which a timely request was made for a hearing before an Administrative Law Judge (the ALJ). On August 17, 2017, a hearing was held by ALJ Michael Carr but plaintiff and his mother failed to appear. (Tr. 69-83). On November 28, 2017, ALJ Carr issued a written decision finding plaintiff's failure to appear as a constructive waiver of his right to appear at a hearing and ultimately not disabled under the Social Security Act. (Tr. 94-118). The Appeals Council (AC) granted review and remanded, due to the lack of proper notice. (Tr. 119-23). In remanding, the AC directed the ALJ to "take any further action needed to complete the administrative record and issue a new decision." (Tr. 122). On April 23, 2019, ALJ Melissa Lin Jones held a second hearing, and on May 8, 2019, she issued a second unfavorable decision. (Tr. 12-36). The Appeals Council denied review and this action followed. (Tr. 1-6).

### C.    The ALJ's Decision

Generally, ALJ Jones made the following findings of fact and conclusions of law:

1. The claimant was born on June 15, 2000 and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on September 12, 2014, the date the application was

---

[1] At the time of application plaintiff's mother commenced the action because plaintiff was a minor.

filed (20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 on June 14, 2018 (20 CFR 416.120(c)(4)).

2. The claimant has not engaged in substantial gainful activity since the date the application was filed (20 CFR 416.924(b) and 416.972.).

3. Before attaining age 18, the claimant had the following severe impairments: learning disorder; speech and language delays (20 CFR 416.924(c)).

4. Before attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A or B (20 CFR 416.920(d), 416.925 and 416.926).

5. Before attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the listings (20 CFR 416.924(d) and 416.926a).
(a) The claimant has less than marked limitation in acquiring and using information.
(b) The claimant has less than marked limitation in attending and completing tasks.
(c) The claimant has less than marked limitation in interacting and relating with others.
(d) The claimant has no limitation in moving about and manipulating objects.
(e) The claimant has less than marked limitation in the ability to care for himself.
(f) The claimant has no limitation in health and physical well-being.

6. Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18 (20 CFR 416.924(a)).

7. The claimant has not developed any new impairment or impairments since attaining age 18.

8. Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.920(c)).

9. Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment (20 CFR 416.920(d)).

10. After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks, not at a production rate pace, that does not require reading, and instructions or directions must be shown by demonstration.

11. The claimant has no past relevant work (20 CFR 416.965).

12. The claimant is currently a "younger individual age 18-44" (20 CFR 416.963).

13. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

15. Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform (20CFR 416.960(c) and 416.966).

16. The claimant has not been under a disability, as defined in the Social Security Act, from June 14, 2018, the day the claimant attained age 18, through the date of this decision (20 CFR 416.924(a) and 416.920(g)).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes four arguments in support of the motion for judgment on the pleadings. (Dkt. No. 16 [Pl's Mem. of Law]). First, plaintiff argues the ALJ erred by failing to cite, discuss, or weigh the only teacher questionnaire in the record. Second, the ALJ improperly rejected valid IQ scores. Third, the ALJ improperly rejected the speech-language evaluation by speech language pathologist (SLP) Mobley. Lastly, the ALJ's RFC determination was not supported by substantial evidence. Plaintiff submitted a reply brief relying on the original arguments and authority contained in his primary brief. (Dkt. No. 19).

### B.   Defendant's Arguments

In response, defendant makes four arguments. First, defendant argues the ALJ considered the opinion provided by the plaintiff's teacher. (Dkt. No. 18 at 13 [Def.'s Mem. of Law]). Second, the ALJ reasonably considered plaintiff's IQ scores. (*Id*. at 17). Third, the ALJ properly determined Ms. Mobley's speech-language evaluation was not supported by the evidence. (*Id*. at 19). Lastly, the ALJ's RFC finding was supported by substantial evidence and the ALJ fulfilled her duty to develop the record. (*Id*. at 22).

### III.   RELEVANT LEGAL STANDARD

#### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

**Standard for Child SSI Benefits**

To be "disabled" within the meaning of the Act, a child must show he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which either lasts or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

A three-step sequential evaluation process determines whether a supplemental security income claimant under the age of 18 is disabled. 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity during the relevant period. *Id*. § 416.924(b). If so, the child is not disabled; if not, the evaluation continues to the next step. At the second step, the ALJ determines whether the child has a "severe" impairment, or combination of impairments – i.e., a slight abnormality or combination of slight abnormalities that causes more than minimal functional limitations. *Id.* § 416.924(c). If not, the ALJ denies the application; otherwise, the evaluation continues.

At step three of the sequential evaluation process, the ALJ determines whether a child's impairments meet, medically equal, or functionally equal the severity of one of the

Commissioner's listed impairments (Listings). 20 C.F.R. §§ 416.924(a), (d). If not, the child is not disabled. *Id.* § 416.924(d). As part of the step three analysis, if the ALJ finds that a child's impairments do not meet or medically equal a listed impairment, the ALJ assesses all functional limitations using six "domains" of functioning to determine whether the child's symptoms are functionally equivalent to the listed impairments. 20 C.F.R. § 416.926a. The six domains of functioning include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). The evaluation of age-appropriate functioning within each domain focuses on the child's abilities and limitations; where the child has difficulty; the quality of any limitations; and the kind, extent, and frequency of help that the child needs. 20 C.F.R. § 416.926a(b)(2). A finding of functional equivalence occurs when a child has an "extreme" limitation in one of the six domains of functioning or "marked" limitations in at least two domains. *Id.* § 416.926a(e).[2]

Standard for Adult's SSI Benefits

A claimant bears the burden of showing that he is disabled under the Act and must show that he is unable to engage in any substantial gainful activity (*i.e.*, either his past relevant work or other work in the national economy), due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A) and (B). The impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

---

[2] "Extreme" means a child has an impairment that very seriously interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e). "Marked" indicates that he or she has an impairment that seriously interferes with the ability for independently initiating, sustaining, or completing activities. *Id.*

laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The burden of proving disability rests with Plaintiff. 42 U.S.C. § 1382c(a)(3)(H). Additionally, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

Whether the claimant was disabled under the Act is a decision reserved to the Commissioner. 20 C.F.R. § 416.927(d). The federal regulations set forth a five-step sequential analysis that the Commissioner must follow in determining the claimant's disabled status. *Id.* § 416.920. If a claimant is found not disabled at any point of the sequential analysis, his claim will not be evaluated any further. *Id.* § 416.920(a). A claimant bears the burden of proof at steps one through four to prove he cannot perform his past relevant work, at which point there is a limited burden shift to the Commissioner to demonstrate there is other work in the national economy which claimant can perform. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

IV.  ANALYSIS

**A. Teacher Opinion**

Case law states an ALJ should consider all relevant evidence in determining a child's functioning, including information from the child's teachers. *White o/b/o T.R.W. v. Berryhill*, 2019 WL 1367382, at *3 (W.D.N.Y. Mar. 26, 2019) (*quoting Swan v. Astrue,* 2010 WL 3211049, *6 (W.D.N.Y. 2010); citing Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007)). Teachers are not acceptable medical sources, but the regulations assert the Agency will ask for information from teachers to describe functioning in school. *See* 20 C.F.R. § 416.926a(b)(3).

In response to a January 30, 2015, letter from the NYS Office of Temporary and Disability Assistance, Mr. Barth[3] from the Dr. Lydia T. Wright School of Excellence, completed a Teacher Questionnaire on March 23, 2015. (Tr. 364, 385-99). Which plaintiff claims the ALJ never expressly addressed in her decision. Plaintiff argues this error requires remand because it is harmful to the plaintiff and supports greater limitations in the domains. (Dkt. No. 16 at 11). Defendant concedes the ALJ did not explicitly refer to the teacher by name but responds that the ALJ was not required to expressly state she considered the opinion and regardless of any such omission, it did not harm plaintiff because it did not support greater limitations. (Dkt. No. 18 at 16).

Contrary to plaintiff's argument that the ALJ entirely failed to discuss the teacher questionnaire, the ALJ cited Mr. Barth's opinion several times in the decision. (Dkt. No. 16 at 11). The ALJ cited to Exhibit 11E, which only contains the teacher questionnaire form from Mr. Barth. (Tr. 22-26). Moreover, the ALJ directly referenced several of Mr. Barth's opinions, including his opinions that plaintiff had no limitations in his ability to interact with others, some body odor issues, difficulties carrying out multi-step instructions, slight difficulties with single-step instructions, difficulty focusing to complete work, and the ability to focus during play without being disruptive. (Tr. 22- 26, *referring to* Tr. 389-97). While plaintiff also argues the ALJ ignored other portions of the opinion, it is well-settled that the ALJ need not mention, in the written decision, every shred of evidence, assessment, or diagnosis found in the record, and an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 448 (2d Cir. 2012).

---

[3] The cover letter for the Teacher Questionnaire is illegible for the personal title used by teacher Barth. Plaintiff has used Mr. and defendant has used Ms. for identification and this decision will refer to the teacher as Mr. Barth.

An ALJ is not to average all of the findings in the evidence about a child's activities to come up with a rating for the domain, but rather consider all evidence and look at the child as a whole. *See* SSR 09-1p: Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – "The "Whole Child" Approach. Although plaintiff argues Mr. Barth's opinion indicated very serious or serious limitations in some of the domains, ALJ Jones appropriately identified other evidence in each domain to support her findings. For example, in the domain of attending and completing tasks, the ALJ noted Mr. Barth's comments of difficulty carrying out multi-step instructions and difficulty focusing enough to complete work and that he required support in order to persist in completing his work. (Tr. 24). However, the ALJ then stated claimant was focused during play and not disruptive or fidgety. (*Id*.).

Additionally, the regulations applicable to claims filed before March 27, 2017, such as plaintiff's claim, provide that the ALJ should consider opinions from nonmedical sources using the regulatory factors listed at 20 C.F.R. § 416.927(c)(1) through (c)(6). 20 C.F.R. § 416.927(f)(1). The regulations explicitly state that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion . . . from a nonmedical source depends on the particular facts in each case." *Id*.

The ALJ's failure to identify the opinion by name and discuss under each domain is harmless because it is largely consistent with the ALJ's findings. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). Mr. Barth opined that plaintiff had no limitations in the domains of interacting and relating to others and moving about and manipulating objects. (Tr. 392-94). He noted that plaintiff had no limitations in almost all of the activities listed within the domain of caring for himself with the exception of taking care of his personal hygiene. (Tr. 395-96). As discussed above, in the domain of attending and completing tasks, Mr. Barth only assessed a serious problem

in carrying out multi-step instructions, but otherwise noted that plaintiff demonstrated less serious problems in all other activities relating to attending and completing tasks. (Tr. 390-91). The ratings by Mr. Barth supported the ALJ's finding of "less than marked" limitations in this domain. *See White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (ALJ's determination of less than marked limitation in domain of acquiring and using information was based upon substantial evidence where teacher questionnaire indicated that plaintiff had problems ranging from "slight" to "very serious" in the activities associated with the domain).

Likewise, while Mr. Barth opined several serious problems in the domain of acquiring and using information, there was again a range of severity. (Tr. 389). *See Petrie ex rel. T.T. v. Colvin,* 2013 WL 1500360, *6 (N.D.N.Y. 2013) (ALJ properly concluded plaintiff suffered from less than marked limitations in domain of acquiring and using information where teacher questionnaire indicated that plaintiff suffered from "slight" to "very serious" problems performing activities associated with domain). The ALJ also considered other evidence in the record when assessing plaintiff's ability to acquire and use information, specifically plaintiff's borderline-to-low average intelligence range, significant school absences and tardiness, and Dr. Santarpia's consultative examination which indicated plaintiff had average cognitive functioning, intact attention, concentration, and memory, and the ability to complete age-appropriate mathematical calculations. (Tr. 21, 23-24 *referring to* Tr. 23, *referring to* Tr. 361, 397, 439, 481, 504-05, 514, 567-69, 578).

Finally, as argued by defendant, assuming *arguendo* the opinion supported a marked limitation in the domain of acquiring and using information, it would be insufficient for a finding of disability because claimant must demonstrate either two marked or one extreme limitation in

the six domains of functioning in order to functionally equal a Listing and establish disability. *See* 20 C.F.R. §§ 416.926a(a), (d).

**B. IQ Scores**

Plaintiff next argues the ALJ erred in rejecting his May 2017 IQ score of 57 and instead relied on a July 2014 IQ score of 72. (Dkt. No. 16 at 15-17). For the reasons outlined below, plaintiff's argument fails.

It is the duty of the ALJ to resolve evidentiary conflicts. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *Vazquez ex rel. Jorge v. Barnhart,* 2005 WL 2429488, at *8 (S.D.N.Y. Sept.30, 2005) ("As Jorge has multiple IQ scores both below and above 70, it is for the ALJ to reconcile these scores."). "[S]o long as the decision is based on evidence, and explained, a hearing officer can credit one IQ score over another." *Skidds v. Colvin*, No. 13-CV-00894, 2016 WL 1162518, at *3 (N.D.N.Y. Mar. 23, 2016). Here, the ALJ explained that she rejected the IQ score of 57 because the record did not support the dramatic drop from a score of 72 to a score of 57;

> The claimant has a history of learning disorder that was accommodated with special education support starting in July 2014 (7F). Intelligence testing from July 2014 showed the claimant to have a full scale IQ score of 72, with a nonverbal score of 77 and a verbal score of 71 (7F/3). The claimant's Individualized Education Plan (IEP) states that the claimant performs below grade level expectations in reading, writing and mathematics (7F). The claimant changed schools several times within the next few years, but his placement did not change (19E; 21E; 7F; 8F; 11F). The claimant was frequently absent or late to school (19E; 21E; 8F; 11F). The claimant's IEP notes that the claimant misses significant classroom time and his educational goals included improving his attendance (11F). Additional intelligence testing performed for reevaluation shows a 12 point drop in the claimant's full scale IQ score, but was obtained using a different intelligence test, was obtained during the period where the claimant was actively and admittedly using marijuana and is not supported by any corresponding decrease in the claimant's functional skills (11F). (Tr. 21)

The ALJ properly concluded there was no evidence to support the 12-point drop in IQ score. *Vasquez–Ortiz v. Apfel,* 48 F.Supp.2d 250, 257 (W.D.N.Y. 1999) (stating that "an ALJ is not

required to accept a claimant's IQ scores when they are inconsistent with the record" but finding plaintiff's scores were not inconsistent with the record) (*quoting Popp v. Heckler,* 779 F.2d at 1499–1500 (11th Cir. 1986).

### C. Speech-Language Evaluation

Plaintiff additionally argues the ALJ improperly rejected a speech-language evaluation by Speech Language Pathologist (SLP) Mobley. (Dkt. No. 16 at 17). SLP Mobley opined plaintiff's overall language skills were severely delayed compared to his peers. (Tr. 483-84, 486). Plaintiff supports his argument by citing his borderline and low IQ scores, academic difficulties, IEP references, 7th grade failure, and Mr. Barth's opinion. (*Id.*). However, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished). In this instance, other evidence of record is inconsistent with SLP Mobley's assessment. For instance, Mr. Barth had opined plaintiff had no problems understanding and participating in class discussion, had slight problems with oral explanation, had no difficulty with peers, showed no problems with communication or holding a conversation with others. (Tr. 392). Moreover, a functional report completed by plaintiff's mother noted no communication difficulties, Dr. Santarpia observed that plaintiff was responsive to questions and cooperative, and the ALJ discerned that plaintiff showed no problems understanding or responding to questions at the hearing. (Tr. 22, 37-68, 340, 480). As cited above, a reviewing court defers to the Commissioner's resolution of conflicting evidence. *Cage,* 692 at 118, 122.

**D. Adult RFC**

Finally, plaintiff contends there is no evidence in the record regarding plaintiff's functioning as an adult and the ALJ failed to develop the record. (Dkt. No. 16 at 19). ALJ Jones applied the adult disability standards when plaintiff turned 18 and found he retained the ability to perform simple, routine, repetitive tasks not performed at a production pace rate that do not involve reading. (Tr. 28). Indeed, as noted by the ALJ, the record contained no opinions regarding functional abilities after plaintiff attained age 18. (Tr. 29). Plaintiff cites a number of cases arguing that the ALJ has to include a narrative decision and cite specific medical facts in making an RFC determination. (Dkt. No. 16 at 20). However, this case differs from those cited as there was a detailed discussion regarding records in the file under the childhood disability claim. The rationale underlying the RFC finding is effortlessly gleaned by the Court. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). *Salmini v. Comm'r Soc. Sec.*, 371 Fed.Appx. 109 (2d Cir March 25, 2010).

Plaintiff has not identified any additional evidence the ALJ should have considered. At the hearing, plaintiff's representative stated there were no outstanding records. (Tr. 41). There was no indication of any psychiatric treatment outside of school and plaintiff testified he stopped attending in eleventh grade. (Tr. 47). The only medical records submitted predate his 18th birthday for treatment of a sprained ankle. (Tr. 41, 555-78). Plaintiff alleged no changes in his condition or treatment since obtaining age 18. Therefore, the ALJ discussed the testimony provided at the hearing as there was no other new and relevant evidence to discuss.

Overall, the ALJ determined an RFC based on the objective evidence, lack of treatment, and opinion evidence in the record. (Tr. 29). Although the ALJ did not reiterate her analysis in the adult phase, the decision included sufficient explanation to support the ALJ's RFC in the childhood claim. *Salmini*, 371 F. App'x at 112-13 ("the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). In this case, the ALJ reasonably relied on Dr. Santarpia's findings and opinions, Mr. Barth's opinions, and other educational and medical records in arriving at the RFC finding.

The Second Circuit has made clear that it is the plaintiff who bears the burden of proving his RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Poupore*, 566 F.3d at 306. Plaintiff has not introduced any evidence showing that he was not able to perform work commensurate with the ALJ's RFC finding, or that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record.

ACCORDINGLY, it is

    ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is
        DENIED; and it is further

    ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is
        GRANTED.

Dated: September 9, 2022         *J. Gregory Wehrman*
Rochester, New York          HON. J. Gregory Wehrman
                                                           United States Magistrate Judge